UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Civil Action No. 5:23-cv-00093-LLK

LESLIE C.                                                                                                    PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                   DEFENDANT

### MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for disability insurance benefits [DIB] under Title II of the Social Security Act. [Doc. 1]. Plaintiff's brief is at Doc. 14, and the Commissioner's response in opposition is at Doc. 18. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 10].

Because Plaintiff's first of two arguments is persuasive and the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence, the Court will REMAND this matter to the Commissioner for a new decision.

### The ALJ's decision

On August 30, 2022, the ALJ issued the Commissioner's final decision denying Plaintiff's DIB claim. [Administrative Record, Doc. 9 at 32-47]. The ALJ found that Plaintiff was not disabled from October 22, 2019, when she alleges that she became disabled, and August 30, 2022, the date of the ALJ's decision. *Id.*

The ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 22, 2019, when she alleges that she became disabled. *Id.* at 35.

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, impairments: a cerebral vascular accident with neurocognitive deficits and borderline intellectual functioning. *Id.*

Third, the ALJ found that Plaintiff has no impairment satisfying the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 36.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, notwithstanding her impairments, Plaintiff can:

> … perform light work as defined in 20 CFR 404.1567(b) except she should never climb ladders, ropes or scaffolds … can occasionally climb ramps and stairs … can occasionally stoop, kneel and crouch … should never crawl … must avoid all exposure to moving mechanical parts and unprotected heights … can frequently handle and finger with the upper extremities … can frequently reach overhead and all around with the upper extremities … can understand, remember and carry out simple instructions … can communicate in simple sentences … can maintain concentration, persistence and pace for simple tasks … can interact frequently with coworkers and supervisors, and occasionally with the public … can tolerate occasional changes in a simple work environment.

*Id.* at 37.

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 45.

Fifth, the ALJ found that Plaintiff could perform a significant number of unskilled, light jobs in the national economy such as small product assembler and parts inspector. *Id.* at 46.

## Legal Standards

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation omitted). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citation omitted).

The substantial-evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the ALJ's decision. *Id.* If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

### The ALJ erred in finding that Plaintiff does not suffer from medically determinable Raynaud's phenomenon.

Plaintiff alleges disability, in part, due to the impact of Raynaud's on her ability to use her upper and lower extremities.

Raynaud's phenomenon / syndrome / disease is a vascular (blood vessel) disorder characterized by intermittent attacks of pallor or cyanosis (bluish discoloration) of the extremities, especially of the fingers or toes, usually initiated by emotion or exposure to cold. *Hicks v. Comm'r*, 2014 WL 670916, at *2 (W.D. Va. Feb. 20, 2014). Doctors don't completely understand the cause of Raynaud's attacks, but blood vessels in the hands and feet appear to overreach to cold temperatures or stress. [Doc. 9 at 302]. Signs and symptoms of Raynaud's disease include:

- Cold fingers or toes

- Color changes in your skin in response to cold or stress

- Numb, prickly feeling or stinging pain upon warming or stress relief

*Id.* During an attack of Raynaud's, affected areas of your skin usually first turn white. *Id.* Then, they often turn blue and feel cold and numb. *Id.* As you warm and your circulation improves, the affected areas may turn red, throb, tingle, or swell. *Id.*

3

The ALJ found that Plaintiff does not suffer from medically determinable Raynaud's [Doc. 9 at 35] and that she has an RFC to perform light work, which generally requires standing/walking of 6 hours total in an 8-hour workday, and to "frequently handle and finger with the upper extremities," and to "frequently reach overhead and all around with the upper extremities" [Doc. 9 at 37]. In support of her finding of no medically determinable Raynaud's, the ALJ found that:

> The claimant saw a rheumatologist [i.e., Christopher Phillips, M.D.] for possible Raynaud's (Exhibit 11F). Her physical examination was normal. It was noted that she "appeared" to have Raynaud's. However, there is no definitive diagnosis to support a severe medically determinable impairment. She testified the rheumatologist told her she did not have to see him anymore. Primary care records show at most some distal changes of Raynaud's, but again, without any diagnosis of Raynaud's (Exhibit 16F). She testified that her feet and hands are always cold, but she did not testify to any functional limitations related to Raynaud's. Social Security Ruling 883c and 42 U.S.C 423(d)(5)(A) places the burden of showing a medically determinable impairment on the claimant. In the instant case, the claimant has failed to uphold her burden by establishing the existence of medically determinable Raynaud's, which is severe enough to seek treatment and/or restrict the claimant from performing any work-related activities.

*Id.* at 35.

To prove that she suffers from a medically determinable impairment, a claimant must point to objective medical evidence from an acceptable medical source:

> If you are not doing substantial gainful activity, we will then determine whether you have a medically determinable physical or mental impairment(s) (see § 404.1520(a)(4)(ii)). Your impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s). After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe.

20 C.F.R. § 404.1521.

Raynaud's Disease is typically diagnosed by white, cold fingers. *Maki v. Comm'r*, 2013 WL 3490716, at *1 (W.D. Mich. July 11, 2013). There is no objective test for diagnosing Raynaud's phenomenon other than direct observation of the discoloration. *Lee v. Comm'r*, 2012 WL 4364194, at *9 (S.D. Ohio Sept. 24, 2012). The discoloration that is central to diagnosis of Raynaud's is livedo reticularis,

4

which defined as a vascular condition characterized by purple discoloration of the skin that is characteristic of Raynaud's. *Cook v. Comm'r*, 2015 WL 5783562, at *15 (D.S.C. Sept. 30, 2015).

In this case, Plaintiff's treating sources diagnosed Raynaud's and supported that diagnosis with observed livedo reticularis. In June 2021, Baptist Health Medical Group Neurology certified physician's assistant (PA-C) Mikal A. Bailey diagnosed Raynaud's and noted livedo reticularis:

> Skin: Livedo reticularis of the bilateral lower extremities especially on the anterior medial aspects of both legs from the mid thigh to the distal lower extremity. These are communicating and do blanch with pressure. I do not see evidence of livedo racemosa. Additionally, there is Raynaud's phenomenon of the bilateral feet in the digits feet. There is delayed capillary refill of more than 10 seconds.

[Doc. 9 at 660]. Similarly, in September 2021, Dr. Phillips noted that Plaintiff "does appear to have Raynaud's, and livedo reticularis." [Doc. 9 at 589]. As indicated above, the ALJ cited Dr. Phillips' lack of a "definitive diagnosis" and relative lack of objective findings in support of a finding of "no medically determinable Raynaud's." Id. at 35.

The medical records reflect that Plaintiff repeatedly and consistently complained of feelings of cold and pins and needles in her upper and lower extremities and that pallor/cyanosis was observed. [Doc. 9 at 301-04, 589, 608, 656, 660]. In September 2020, Plaintiff's primary care physician, Bradley Albertson, D.O., completed an Attending Physician Restrictions form, finding, among other things, that Plaintiff can rarely if ever lift/carry; reach, handle, or finger with the right hand/arm; use feet for repetitive movements; or climb, balance, stoop, crouch, knee, or crawl. [Doc. 9 at 497].

Plaintiff testified concerning her ongoing feelings of cold and pins and needles in her upper and lower extremities. *Id.* at 66-68. Plaintiff testified that one of her last jobs was working as a phlebotomist but that, due to Raynaud's, she had to quit as she was having difficulty hitting blood vessels and "get[ting] the blood out." *Id.* at 79.

In light of the findings of the medical sources (grounded in anatomic observation of livedo reticularis) and Plaintiff's uncontradicted testimony, substantial evidence does not support the ALJ's

finding of no medically determinable Raynaud's. The Sixth Circuit has long construed Step 2 of the sequential evaluation process as a de minimis hurdle, *Rogers v. Comm'r*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Nejat v. Comm'r*, 359 F. App'x 574, 576 (6th Cir. 2009) (quoting *Farris v. Sec'y*, 773 F.2d 85, 89 (6th Cir. 1985)). Plaintiff adequately proved that she suffers from medically determinable Raynaud's. *See Jeremy J. v. Comm'r*, 2022 WL 508894 (W.D. Ky. Feb. 18, 2022) (remanding for a new decision because Jeremy J. adequately proved that he suffers from medically determinable complex regional pain syndrome (CRPS)).

**The ALJ's erroneous finding of no medically determinable Renaud's was not harmless.**

Having discounted the presence of medically determinable Raynaud's, in determining Plaintiff's RFC, the ALJ was **required** to discount the alleged effects thereof. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (Assessing Residual Functional Capacity) ("The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s). Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments."). The ALJ concluded that Plaintiff has an RFC to perform light work, which generally requires standing/walking of 6 hours total in an 8-hour workday, and that Plaintiff can "frequently handle and finger with the upper extremities," and can "frequently reach overhead and all around with the upper extremities." *Id.* at 37. It is unclear that the ALJ would have so found but for the erroneous discounting of an underlying Raynaud's impairment.

The ALJ acknowledged that "[[i]n considering the claimant's symptoms, the undersigned must follow a two-step process." *Id.* at 41. First, the Commissioner must determine that there is an "underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms." *Id.* at 42. Second, the Commissioner must "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's

6

work-related activities." *Id.* It is unclear how the ALJ could have fairly evaluated the limiting effects of an impairment the ALJ had erroneously found not to exist.

### Plaintiff's second argument is unpersuasive.

As stated above, in September 2020, Plaintiff's primary care physician, Bradley Albertson, D.O., completed an Attending Physician Restrictions form, finding, among other things, that Plaintiff can rarely if ever lift/carry; reach, handle, or finger with the right hand/arm; use feet for repetitive movements; or climb, balance, stoop, crouch, knee, or crawl. [Doc. 9 at 497]. Dr. Albertson did not, however, specifically attribute these limitations to Renaud's. *Id.*

The ALJ found Dr. Albertson's medical opinions to be "not persuasive given Dr. Albertson had only seen the claimant on a couple of occasions prior to the opinion, and the degree of limitation is not supported by his treatment notes." *Id.* at 38.

Plaintiff's second argument is that, in light of Dr. Albertson's medical opinions, the ALJ's "RFC [residual functional capacity finding] is not based on substantial evidence." [Doc. 14 at PageID.812].

Because Plaintiff applied for DIB in disability benefits in February 2020 [Doc. 9 at 32], the new rules for weighing medical opinions apply. *See* 20 C.F.R. § 404.1520c ("For claims filed ... on or after March 27, 2017, the rules in this section apply."). Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). In determining the persuasiveness of a medical opinion, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). But the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff's second argument is unpersuasive for two reasons. First, the ALJ's finding that Dr. Albertson's medical opinion is "not persuasive" [Doc. 9 at 38] comports with the above rules for weighing medical opinions. Second, an ALJ may "properly give little weight" to findings on a "check-off form of

functional limitations that did not cite clinical test results, observations, or other objective findings." *Ellars v. Comm'r*, 647 F. App'x 563, 566 (6th Cir. 2016).  The Attending Physician Restrictions form completed by Dr. Albertson [Doc. 9 at 497] was such a form.

## Order

Because Plaintiff's first of two arguments is persuasive and the Administrative Law Judge's (ALJ's) decision is not supported by substantial evidence and is not in accord with applicable legal standards, this matter is hereby REMANDED to the Commissioner for a new decision and further administrative proceedings deemed necessary and appropriate by the Commissioner.

February 27, 2024

Lanny King, Magistrate Judge
United States District Court